UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN EDWARDS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMONWEALTH EDISON and BARBARA STEVENS,<br><br>    Defendants. | Case No. 15 C 3260<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination action brought by Plaintiff Kristen Edwards against her employer Commonwealth Edison and Barbara Stevens, the Company's Director of Occupational Health and Regulatory Medical Services Department (the "OHS Department"). Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") and asserts six federal and Illinois state law claims against Defendants for their purported failure to accommodate her disability and other misconduct. Defendants now move to dismiss [13] two of the six claims—Counts V (intentional infliction of emotional distress) and VI (negligent infliction of emotional distress)—under Federal Rule of Civil Procedure 12(b)(6). The motion is granted.

I. **Legal Standard**

Under Rule 12(b)(6), this Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th

Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendants' motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Facts

Plaintiff Kristen Edwards began working at Commonwealth Edison on or around November 5, 2012, and held the position of Senior Industrial Hygienist. Amended Complaint ("AC") ¶ 3. Plaintiff is a military veteran who suffers from PTSD, which manifested before she began working for Commonwealth Edison. AC ¶¶ 23-25. Plaintiff attributes her PTSD in part to an assault and other traumas she suffered while on active military duty. AC ¶ 26. Plaintiff informed her supervisors at Commonwealth Edison that she suffered from PTSD. AC ¶¶ 45, 47.

Commonwealth Edison is a public utility that distributes electricity to customers in the State of Illinois. AC ¶ 1. Barbara Stevens was the Director of the OHS Department at Commonwealth Edison. AC ¶¶ 2, 79. In that role, Stevens

was responsible for coordinating health and other employment benefits for Commonwealth Edison employees. AC ¶¶ 79-80.

The relevant background begins in February 2013 when, following a change in supervisors from Mark Quinlan to Leonard Tully, Plaintiff began experiencing less favorable treatment at work. AC ¶¶ 14-15, 17, 28-43. From July to October 2013, Plaintiff lodged at least three complaints with Commonwealth Edison's Human Resources Department, and Human Resources commenced an investigation into Plaintiff's complaints. AC ¶¶ 51, 62-63. In August 2013, for example, Plaintiff told Human Resources that Tully was discriminating against her, thereby creating a hostile work environment and aggravating her PTSD. AC ¶ 63. In October 2013, Plaintiff again told Human Resources that Tully's behavior was triggering her PTSD, causing her panic attacks and undermining her job performance. AC ¶ 51. The same month, Human Resources told Plaintiff that it had completed its investigation and concluded that Plaintiff's complaints were "partially" substantiated. AC ¶¶ 64-66. Human Resources concluded that Tully required additional training on communication, management and leadership. AC ¶ 67.

Purportedly as a result of Tully's behavior and Commonwealth Edison's failure to adequately respond, by December 2013, Plaintiff was experiencing extreme PTSD episodes, that is, intense depression and anxiety and panic attacks, and began seeking psychological treatment. AC ¶¶ 74, 76. In December 2013 and January 2014, Plaintiff and her doctors worked with Commonwealth Edison's OHS Department to apply for and obtain short-term disability. AC ¶ 81.

In early February 2014, the OHS Department, through Stevens, asked Plaintiff to submit to an independent medical examination. AC ¶ 82. Plaintiff requested that she be assigned a female examiner because a male examiner could trigger her PTSD. AC ¶ 83. Stevens denied that request. AC ¶ 84. Plaintiff's treating physician then sent Stevens a formal request of medical necessity requesting assignment to a female examiner. AC ¶ 85. Stevens denied that request too. AC ¶ 86. Stevens told Plaintiff that Commonwealth Edison would deny her short-term disability benefits if she did not appear for the independent medical examination. AC ¶¶ 87. At an unidentified date, Plaintiff submitted to the independent medical examination before a male examiner, and, during her examination, Plaintiff experienced a panic attack. AC ¶¶ 88-89.

On or about February 13, 2014, the independent medical examiner advised the OHS Department that Plaintiff's PTSD continued to prevent her from performing her duties as a Senior Industrial Hygienist at Commonwealth Edison. AC ¶ 90. On or about February 17, 2014, the OHS Department sent the independent medical examiner two YouTube videos from April 2013 and January 2014 of Plaintiff giving speeches in public forums about her experiences as a government whistleblower. AC ¶ 91. In response, on February 20, 2014, the independent medical examiner sent a letter to the OHS Department opining that: "The evidence in the [January 2014] video contradicts disability." AC ¶ 92 (brackets in original).

On or about March 5, 2014, Stevens called Plaintiff by telephone. AC ¶ 92. During the conversation, according to Plaintiff, Stevens:

- accused Plaintiff of lying about her PTSD;

- told Plaintiff that Stevens had found a YouTube video that showed that Plaintiff was not suffering from PTSD and could work;

- told Plaintiff that the OHS Department was going to continue to observe and investigate her; and

- threatened that she had the ability to deny Plaintiff's insurance benefits.

AC ¶ 94. Plaintiff contends that Stevens made her feel like a criminal and that Stevens was "out to get her." AC ¶ 95; *see also* AC ¶¶ 96-97. Plaintiff contends that in the weeks following the call, she experienced increased anxiety and depression, including panic attacks. AC ¶ 98.

## III. Analysis

Defendants move to dismiss Counts V and VI only—the Illinois common law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. In Subsections A and B below, this Court analyzes each count in turn, and concludes that dismissal is warranted as to both.

### A. Count V: Intentional Infliction of Emotional Distress

In Count V, Plaintiff brings an intentional infliction of emotional distress claim against Defendants, alleging that they intended to cause her severe emotional distress. AC ¶ 130. Plaintiff supports this claim by pointing to two purported incidents of extreme and outrageous conduct by Defendants: (1) their refusal to have Plaintiff evaluated by a female—and not male—independent medical

5

examiner as a condition for her disability benefits; and (2) the accusations Stevens made about Plaintiff on the March 5, 2014 telephone call. AC ¶¶ 84, 86, 94. Defendants respond that neither incident amounts to "extreme and outrageous" conduct, as is required to state an intentional infliction of emotional distress claim.

To state an intentional infliction of emotional distress claim, Plaintiff must show: (1) that the conduct involved is "extreme and outrageous"; (2) that Defendants intended that their conduct inflict severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. *Lewis v. School District #70*, 523 F.3d 730, 746 (7th Cir. 2008). Mere insults, indignities and other trivialities are not actionable. *Id.* at 746-47. All that is at issue at the motion to dismiss stage is whether Plaintiff has met the first element: "extreme and outrageous" conduct. The standard for "extreme and outrageous" conduct is "quite high." *Lewis*, 523 F.3d at 747. Whether conduct is "extreme and outrageous" is judged on an objective standard. *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. App. Ct. 1999). Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) (internal quotations omitted).

To show just how exacting the "extreme and outrageous" requirement is, this Court begins with an analysis of five informative cases. These cases collectively show: (1) that Courts police the line of "extreme and outrageous" conduct, particularly where employers are involved, only allowing especially abusive and atrocious transgressions to survive a motion to dismiss; and (2) that false

6

accusations, such as the ones Stevens allegedly made on the March 5, 2014 call with Plaintiff, frequently are not deemed "extreme and outrageous," even when part of a larger pattern of alleged employer misconduct. Indeed, in affirming summary judgment for an employer on an employee's intentional infliction of emotional distress claim, the Seventh Circuit recently observed: "In the absence of conduct calculated to coerce and employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress." *Arroyo v. Volvo Group North America, LLC*, No. 14-3618, ___ F.3d ___, 2015 WL 5846595, at *8 (7th Cir. Oct. 6, 2015) (internal brackets and quotations omitted). The aggrieved employee in *Arroyo*, like Plaintiff here, was a military veteran who suffered from PTSD. *Id.* at *1, 3. Likewise, the Court in *Fang v. Village of Roselle*, No. 95-5175, 1996 WL 386556, at *4 (N.D. Ill. July 5, 1996), found from its own survey of intentional infliction of emotional distress cases involving employment relationships that: "Most conduct by an employer that falls short of attempted coercion into a crime or sexual misconduct, even if such conduct is illegal, has fallen short of the 'outrageous' behavior required by case law." *See also Lewis*, 523 F.3d at 747 (collecting examples of the types of cases where intentional infliction of emotional distress claims have been actionable).

Likewise, in *Witkowski v. St. Anne's Hospital of Chicago, Inc.*, 447 N.E.2d 1016, 1021-23 (Ill. App. Ct. 1983), the Illinois Appellate Court affirmed summary judgment, finding that the employer's wrongful discharge of its chief physical

7

therapist to prevent him from receiving long-term disability benefits was not "extreme and outrageous" as a matter of law. The Court reached this conclusion even though the employee alleged, like Plaintiff here, that the employer impeded her access to disability benefits, and, knowing that the employee had a preexisting and serious medical condition (an ulcer), took actions that aggravated the condition. *Id.* at 1021-22.

Additionally, in *Fang*, 1996 WL 386556, at *1, 5-6, the Court dismissed an intentional infliction of emotional distress claim where the employer terminated the employee after he requested disability benefits. More compelling than here, the termination in *Fang* occurred weeks after the employee had suffered a mild heart attack and days after the employee requested a 30-day leave of absence. *Id.* at *1.

Furthermore, the Seventh Circuit in *Harriston v. Chicago Tribune Co.*, 992 F.2d 697 (7th Cir. 1993), affirmed dismissal of the employee's intentional infliction of emotional distress claim, finding that the employer's discrimination and false accusations, even if true, were not "extreme and outrageous." *Id.* at 700, 702-03. The Court reached this conclusion under facts more compelling than here. The employee in *Harriston* held a sales position and alleged, among other things, that her employer falsely accused her of having poor sales; reduced her sales territory and sales accounts; reprimanded her for no reason; and, after her car was vandalized on several occasions in the company's parking lot, ignored her concerns for her property and personal safety. *Id.* at 703.

Indeed, district courts in this Circuit have repeatedly dismissed intentional infliction of emotional distress claims relying upon the *Harriston* case. In *Socorro v. IMI Data Search, Inc.*, No. 02-8120, 2003 WL 1964269, at *5 (N.D. Ill. April 28, 2013), for example, the Court, citing *Harriston*, dismissed the intentional infliction of emotional distress claim even though it characterized the employer's conduct as "deplorable." Worse than Defendants here, the employer in *Socorro* allegedly:

- terminated the employee based on a background check that mistakenly reported that the employee had a prior criminal conviction;

- did not afford the employee the opportunity to challenge the veracity of the background check;

- similar to here, falsely accused the employee of falsifying his employment application; and,

- worse than here, repeated to third parties that the employee was fired for lying on his employment application, and had spent six months in jail, impeding the employee's efforts to secure new employment.

*Id.* at *1, 5.

Likewise, in *Petrovic v. American Airlines, Inc.*, No. 13-246, 2014 WL 683640, at *1-3 (N.D. Ill. Feb. 21, 2014), the Court denied an employee's motion to amend her intentional infliction of emotional distress claim, finding that it would not survive a motion to dismiss. The employer fired the employee, falsely accusing her of violating company policies; and the Court, citing to *Harriston* and *Socorro*, found that such conduct was insufficient to maintain a viable intentional infliction of emotional distress claim. *Petrovic*, 2014 WL 683640, at *2.

These cases compel the conclusion that, here, Plaintiff has not pled facts that, even when taken as true and with all reasonable inferences drawn in her favor,

9

state a viable intentional infliction of emotional distress claim. *See Arroyo*, 2015 WL 5846595, at *8; *Fang*, 1996 WL 386556, at *4. *Harriston*, *Fang* and *Socorro*, moreover, show that worse conduct is inactionable.

In response, Plaintiff points to Defendants' knowledge of her PTSD, but such knowledge remains insufficient to survive a motion to dismiss. For example, the employer in *Witkowski* not only knew about the employee's medical condition but, worse than here, fired the employee, thereby cutting off the prospect of paying out disability benefits. By contrast in this case, Commonwealth Edison awarded Plaintiff disability benefits. Stevens only threatened to discontinue Plaintiff's disability benefits, *see* AC ¶ 94; and there is no allegation that Commonwealth Edison followed through on that threat.

For these reasons, Count V is dismissed without prejudice.[1] Having reached this decision, this Court declines to address Defendants' alternative basis for dismissal under the Illinois Human Rights Act.

---

[1] This case is also distinguishable from the two principal cases on which Plaintiff relies: *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1989), and *Chen v. Mayflower Transit, Inc.*, No. 99-6261, 2002 WL 1632412 (N.D. Ill. July 22, 2002). Both cases involved a pattern of extortion that is not present here, and involved serious threats that were actually carried out. In *McGrath*, 533 N.E.2d at 807-09, 811-12, the defendants, over almost two years, developed and executed a fraudulent scheme that caused the plaintiff to lose $4,000,000. The plaintiff alleged that the defendants, knowing of his heart condition and later that he suffered a "massive heart attack," threatened him with financial ruin and, while recuperating from heart surgery, persisted in calling plaintiff to further the fraud. *Id*. at 808-09, 812. In *Chen*, 2002 WL 1632412, at *7, the Court, relying on *McGrath*, denied summary judgment, finding a triable issue of fact because the defendant moving company's escalating demands for more money and other threats before it would release the plaintiff's belongings constituted a kind of extortion. Unlike Stevens here, the moving company in *Chen* acted on its threats, placing the plaintiff's belongings in storage. *Id*. at *7.

## B. Count VI: Negligent Infliction of Emotional Distress

Pointing to the same conduct, Plaintiff also brings a negligent infliction of emotional distress claim against Defendants, alleging that they owed her a duty to maintain and improve her physical and emotional well-being while coordinating her benefits. AC ¶ 135.

Defendants respond that this claim is preempted by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq*. Sections 5(a) and 11 of the IWCA prevent an employee such as Plaintiff from pursuing common law claims against its employer for "accidental" injuries arising out of and in the course of employment. *Dale v. South Central Illinois Mass Transit*, 17 N.E.3d 229, 233 (Ill. App. Ct. 2014). There are four exceptions to the IWCA's otherwise exclusive remedy. Plaintiff can avoid preemption if she establishes that her injury: (1) was not "accidental"; (2) did not "arise from" her employment; (3) was not received during the course of her employment; or (4) was not compensable under the IWCA. *McPherson v. City of Waukegan*, 379 F.3d 430, 442-43 (7th Cir. 2004); *Dale*, 17 N.E.3d at 233. Plaintiff does not dispute that the IWCA applies (nor can she), but rather argues that the first three exceptions save her claim. They do not.

Beginning with the first exception, Plaintiff argues that her emotional injury was reasonably foreseeable—and thus not accidental—from Defendants denying her a female independent medical examiner and making false accusations on the March 5, 2014 telephone call. But this argument mistakes the relevant inquiry: whether the harmful conduct (here, the deprivation of a female examiner and the false

accusations) was accidental or not. *Dale*, 17 N.E.3d at 234. Accordingly, under the first exception, Plaintiff must show that Defendants acted with the "intent to injure" her. *Dale*, 17 N.E.3d at 234. Unlike in Count V, in Count VI, Plaintiff alleges that Defendants acted with negligence, not with an intent to injure her. For this reason, Courts repeatedly dismiss negligent infliction of emotional distress claims based on the IWCA. *E.g.*, *Simpson v. Wayne County, Illinois*, No. 13-359, 2013 WL 4411018, at *3-4 (N.D. Ill. Aug. 15, 2013); *Porter v. International Business Machines Corp.*, 21 F. Supp. 2d 829, 833 (N.D. Ill. 1998); *Krieger v. Adler, Kaplan & Begy*, No. 94-7809, 1996 WL 6540, at *14 (N.D. Ill. Jan. 5, 1996). This Court finds no reason to deviate from these cases.

Turning to the second and third exceptions, Plaintiff argues that her injury did not arise from or during the course of her employment because the denial of a female examiner and the March 5, 2014 call occurred while she was on short-term disability leave. Under Section 2 of the IWCA, an injury "arises out of and in the course of employment" if its origin is in "some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury." *Saunders v. Industrial Commission*, 727 N.E.2d 247, 250 (Ill. 2000); *see also Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 323 (7th Cir. 1992). An injury does not rise out of employment if it results from a hazard that the employee would have been exposed to outside of her employment. *Juarez*, 957 F.2d at 323.

Here, Plaintiff's purported injury arose from and during the course of her employment because its origin is in Commonwealth Edison's decision to afford her employee insurance benefits or not. Plaintiff was seeking disability benefits from her employer Commonwealth Edison. Plaintiff was in communication with her employer's disability coordinator who, as Plaintiff expressly has pled, AC ¶¶ 133, 135, was acting in the scope of her employment.

Contrary to her express allegations, Plaintiff responds that there can be no employment connection, let alone an incidental one, *see Saunders*, 727 N.E.2d at 250, because the injury occurred while she was on leave. That argument is unavailing. Leave does not automatically sever the employment relationship. To that point, in *Dale*, 17 N.E.3d at 235, the employer purportedly retaliated against the employee who invoked certain statutory rights, and the Illinois Appellate Court found at summary judgment that the IWCA preempted the employee's retaliatory discharge claim even though the retaliation occurred while the employee was on medical leave. For these reasons, Count VI is dismissed with prejudice.

**IV. Conclusion**

Defendants' motion to dismiss [13] is granted. Count V (intentional infliction of emotional distress) is dismissed without prejudice, and Count VI (negligent infliction of emotional distress) is dismissed with prejudice. Plaintiff is given leave until November 6, 2015 to file a Second Amended Complaint, if she can do so consistent with her Rule 11 obligations. Defendants have until November 20, 2015

to answer or otherwise respond to any Second Amended Complaint. The next status hearing remains set for January 4, 2016 at 9:45 a.m. in Courtroom 1725.

Dated: October 23, 2015

                                              Entered:

                                              John Robert Blakey
                                              United States District Judge